# CLEVELAND NATIONAL BANK v. D. A. ARNWINE, et al.

## and

# FIRST NATIONAL BANK OF POLK COUNTY v. S. B. McCLARY, et al.

Eastern Section.   January 29, 1927.

Petition for Certiorari denied by Supreme Court, June 11, 1927.

1. **Fraudulent conveyances. A debtor may favor one creditor over another so long as there is no fraud.**

The rule as to preference of creditors in Tennessee is that a solvent debtor can always prefer and that an insolvent debtor can secure or prefer pre-existent or present creditors but that the transaction must be in good faith, for a sufficient consideration and without intent to aid such insolvent debtor in defrauding his creditors.

2. **Fraudulent conveyances. Parent and child. Transactions between father and son are searched carefully for fraud.**

It is true that transactions between father and son or those closely related are looked upon with suspicion, but they are not within themselves badges of fraud and this fact alone does not cast the onus upon the grantee or beneficiary to show there was no fraud.

3. **Fraudulent conveyances. Evidence. Evidence held insufficient to show fraud in the preference of creditors.**

In an action to set aside certain conveyances the evidence examined and held to show that the creditors were legally preferred.

4. **Fraudulent conveyances. Evidence. It is improper to ask parties as to their good faith.**

In an action to set aside certain conveyances as fraudulent where the parties were asked and answered questions as to their acting in good faith or as to their intent in making and taking conveyances sought to be set aside, held that the evidence was improper.

5. **Fraudulent conveyances. Where innocent creditors are included in a fraudulent deed, the deed can not be set aside as to them.**

The law is now settled in this state that an intentional fraud by the maker of a trust deed as to a portion of the debts provided for, but not participated in by the other beneficiaries whose debts are valid, is only void as to so much as is embraced by the fraudulent purpose of the maker and concurred in by the beneficiaries whose debts are false and fictitious.  Such a deed is good as to the claims of other beneficiaries.

6. **Fraudulent conveyances. Motives which prompt preferences of creditors are immaterial.**

The secret motives which prompt the preferences are immaterial. The law can t ake no cognizance of feelings and intentions which are not manifested by extraordinary conduct.  It can not assign a bad motive to an act which is not wrong either in itself or in its necessary consequences. When the act is right no secret feelings can change its character.  In contemplation of law the motive which results in a proper action is not a bad one.  The desire to avoid a sacrifice, or to prevent an expected criminal prosecution, or an expectation to receive future employment, or that the property will be settled upon the debtor's wife or family or mere caprice, or the gratification of secret ill will, does not affect the validity of the transfer for such secret motives are not the subject of legal inquiry.  Where there is merely

a preference even a jury is not at liberty to deduce fraud from that which the law presumes honest.

7. **Fraudulent conveyances. Evidence. Evidence held not sufficient to show fraud in conveyance of son to his mother.**

In an action to set aside the conveyance where it was shown that the father of the grantor used money of his mother in purchasing a place for the grantor and then later he gave a deed of trust to secure her money which went into the place, held that the evidence showed a valid transaction.

Appeal from Chancery Court, Polk County; Hon. T. L. Stewart, Chancellor.

Affirmed in first case, and modified and affirmed in second.

Mayfield & Mayfield, of Cleveland, and Witt & Son, of Benton, for appellant.

Joe V. Williams, of Chattanooga, and Winston H. Prince, of Benton, for appellee.

SNODGRASS, J.   These two Polk county chancery causes were heard together.   In the first mentioned cause it was sought by the bill to collect a negotiable promissory note of $1000, which the bill in substance averred was executed and signed by the defendants, D. A. Arnwine, B. E. Biggs and S. B. McClary, as a renewal of one or more promissory notes previously existing.   The note was dated Oct. 22, 1921, due one year after date, and providing also that if collected by an attorney, by suit or otherwise, the makers agreed to pay all fees and costs of collection.   It was averred that said note, with attorney's fee, costs and interest thereon, is past due, justly owing and wholly unpaid.

It was sought by the bill to set aside as fraudulent a certain deed, and to reach and subject a certain tract of land or farm described in the deed and bill as void, by the defendant S. B. McClary to his father, the defendant B. F. McClary, which was dated August 22, 1922, it being alleged that said deed was voluntary; that the consideration of $8000 mentioned in the deed was false and fictitious; that it was contrived of fraud, collusion and guile, to the intent and purpose to delay, hinder and defraud the creditors of said defendant S. B. McClary of their just and lawful debts; and especially to hinder, defraud and delay complainant of its debt, and that the co-defendant B. F. McClary took said conveyance well knowing the fraudulent purpose and character thereof, and with the intent to aid said defendant S. B. McClary to hinder, delay and defraud his creditors, especially this complainant; that said deed was executed with a secret purpose or agreement between said fraudulent grantor and grantee to this end, or that, if said consideration recited had been paid, the same was fraudulent, because

said consideration was wholly inadequate to the value of the property transferred; that the same was well worth more than twice the amount of said alleged false and fictitious consideration.

It was charged, upon information and belief, that defendant S. B. McClary has remained and still remains in full possession and control of said property, proceeds to collect the income therefrom, pay the taxes thereon, and, since said conveyance, has himself proceeded to purchase the material, hire the labor and build, and erect thereon a large and valuable barn, completed within recent months. It was again charged that all of the aforesaid fraudulent transactions and actions upon the part of the defendant S. B. McClary were with the full knowledge, collusion and connivance of his father, the co-defendant B. F. McClary, and that said co-defendant has made repeated statements of his knowledge and collusion in the aforesaid fraudulent and inequitable transactions.

It was then claimed that, unless impounded by attachment and restrained by injunctive process, the said defendant S. B. McClary may proceed to a sale or incumbrance of his individual property, or the 85 acre farm reserved to himself and excepted in the description hereinbefore made, (meaning that of the 151 acre tract); that unless attached and likewise enjoined said defendants S. B. and B. F. McClary may also sell and encumber the aforementioned farm fraudulently conveyed as aforesaid, to the great and irreparable loss and injury of the creditors of said defendant S. B. McClary, and especially the complainant.

It had been also charged that defendant S. B. McClary prior to the conveyance attacked, both as principal and surety, was indebted to complainant, and to other banks and individuals, but that the names of such and the amounts due them were unknown to complainant; that being thus indebted to complainant, (and it was charged upon information and belief to others) and intending or contriving not to pay said indebtedness, on August 22, 1922, the defendant executed the deed to the tract described in the bill. It was further represented by the bill that the interest of the creditors of said S. B. McClary, and especially the complainant, demand the appointment of a receiver to take immediate charge of the aforesaid lands, individually owned by said S. B. McClary, and the farm fraudulently conveyed as aforesaid, to protect the buildings, timber and other portions thereof, to prevent waste, and to conserve for the payment of said debts and just obligations the income and profits arising from said land.

In addition to praying for appropriate process and the extraordinary process mentioned, and for the appointment of a receiver, it was sought to have the bill sustained as a general creditor's bill, and the usual orders incident and necessary thereto were asked.

A joint demurrer, answer and plea in abatement were filed by the defendants S. B. and B. F. McClary, and issue was joined on the plea in abatement. The other defendants did not answer, and as to them a pro confesso was taken.

The second cause is the suit of the First National Bank of Polk county, filed against a number of defendants, one of whom, S. B. McClary, was sued as one of the makers of a certain $2000 note, along with defendant J. D. Nuchols, as joint makers. In this bill it was averred that on July 7, 1923 the firm of Harrison & Gamble executed to the complainant a promissory note in the sum of $2000, due in four months, and providing that in the event said note is placed in the hands of an attorney for collection they would pay ten per cent. attorney's fee; that said note was endorsed by Walter M. Hattison (Harrison?) and C. W. Gamble, each of whom, it was averred, was hopelessly insolvent, and that they had made an assignment, and it was averred that their assets turned in would not pay over ten cents on the dollar, after satisfying the preferred claims. However, it was stated that the two defendants as indicated also signed said note as security, and that this suit was brought against them, after demand and notice being duly made, and that as such endorsers the defendants are justly indebted to the complainant in the sum of $2000 as principal, with accrued interest, and $200 attorneys' fees. The note was copied into the bill, setting out the various signatures of the obligors thereon, and it was averred that this note was a renewal of original note over two years old, which had been signed by McClary and others at all times when required to be renewed, and it was averred also that these renewals had been accepted by the complainant without a knowledge of the conveyance which the bill attacked.

It was averred that defendant J. D. Nuchols had offered to secure his part of said debt, but that complainant was not fully informed of his solvency. As to defendant S. B. McClary it was averred that he had refused to answer or make any offers in anywise, and had fraudulently disposed of his property, both personal and real, and had fraudulently covered up his property, and had made the statement that he did it for the purpose of avoiding the payment of his brother-in-law Gamble and his friend Harrison's debt. It was averred that the defendant McClary was still fraudulently selling his property, trying to fraudulently dispose of the remainder of his realty, giving mortgages and offering to sell another farm.

The bill averred that defendant McClary owned certain lots in Benton, which were described in the bill, and that on the 6th day of May, 1922 he had made and executed a certain deed of trust therefor to H. W. McClary, Trustee, to secure a note of $4000 to Mattie McClary, his mother, due in twelve months from date, and that in

said deed of trust he had included a life estate and a one-ninth interest in Lots 101 and 116, and that on April 28, 1923 said McClary sold and conveyed lots Nos. 101 and 116 to J. H. Taylor, free and unincumbered, which it was averred was prima facie evidence that said debt, if it ever did exist, was paid, and says that it is in consideration of $100 cash paid.

It was averred that all of said property was worth $4000, but that with the two lots sold off it is not worth $3000. The conveyance to the mother's benefit was attacked as fraudulent, it being alleged that it was made to cover up and avoid the payment of his obligations as security for Harrison and Gamble, that his mother knew this at the time it was made, and that S. B. McClary never received the $4000 from his mother, and that same is fraudulent and void. (Meaning, we suppose, that the transaction was void.)

It was asserted on information and belief that S. B. McClary claimed another piece of land, but that if he had the same it was by an unregistered deed from his brother-in-law, J. Lake McClary. It was averred that he was selling his property daily, and had sold an auto the 5th or 6th of December to Jesse Allen for $600 cash, which it was averred on information was worth much more, and that it was rumored and reported that he was about to remove from the State to Oklahoma. It was averred that all of said sales and transfers were made for the fraudulent purpose of avoiding his obligations as security for Harrison & Gamble's debts. It was averred that defendant was not entitled to homestead in said land or town lots, because he waived the same in his fraudulent deal to his trustee to secure his mother for the fraudulent debt, or a debt that did not exist.

Process was prayed for, judgment asked on the note, and also that an attachment issue and be levied on the lots described in the bill, and on any personal property that might be found first; that the mortgage or deed of trust be declared void and set aside and the property subjected and sold for part or all of said note, as might be found necessary.

Fiat was obtained and attachment issued and was levied on the lots and on a Ford roadster, which the defendant replevied by giving a delivery bond in the sum of $1000, conditioned to be void if defendant pay value of car sued for, $500, if cast in the suit.

Demurrer, answer and plea in abatement were filed by the defendants McClary, and a separate answer was filed by J. D. Nuchols. Aside from the questions made by these defensive pleadings in both these causes, other questions were made by an amended answer and pleading filed after the trustee in bankruptcy had been made party, but they are sufficiently stated in the opinion of the Chancel-

lor following, and are not set out here to avoid length and repetition.

Proof was taken and the cause went to trial before the Chancellor, who on the hearing in the cause of the Cleveland Bank v. D. A. Arnwine, et al, No. 1042, gave the complainant a decree (the demurrer having been previously overruled) against D. A. Arnwine and B. E. Biggs for the sum of $1000, together with interest at the legal rate of six per cent. from October 22, 1922, and in addition thereto ten per cent. of said amount to cover complainant's attorneys' fee, as provided for in the note sued on, together with the costs of the cause, for which an execution was awarded: but that for reasons stated in his opinion, which was made part of the record, it was adjudged and decreed that complainant's bill as to defendants S. B. McClary and B. F. McClary be dismissed in all respects, and that the writs of attachment and injunction be dissolved and dismissed, and that complainant and its sureties on the cost bond, Charles S. and P. B. Mayfield and R. P. Taylor, trustee pay all the costs of the cause incident to making said defendants party, for which execution was awarded.

Certain of complainant's exceptions to testimony were overruled, while its motion to strike the amended and supplemental answer of defendants filed October 27, 1925 setting up plea of estoppel and res adjudicata was sustained. The defendants' exception and motion to strike from the record Exhibit A filed with the petition of R. P. Taylor, trustee on April 27, 1925 purporting to be a certified copy of the order made by and before the referee in bankruptcy, allowing said Taylor as trustee in bankruptcy to intervene herein for the benefit of creditors of the said S. B. McClary, was overruled.

In the other cause, the First National Bank of Polk County v. S. B. McClary et al., the demurrer theretofore having been overruled. the court sustained the attachment insofar as the same had been issued and levied upon the Ford roadster, and gave a judgment against defendant S. B. McClary, as principal, and J. H. Taylor and G. L. Gilliland as securities on the replevin and forth-coming bond for the reasonable value of the property at the time of the attachment and at the time of the execution of said bond, to ascertain which a reference was ordered, for the reasons stated in his opinion, made part of the record. It was adjudged and decreed by the court that, except for the value of the automobile, the complainant's bill be and the same was dismissed in all respects, and that complainant and its security on the cost and attachment bond, B. B. C. Witt, pay all the costs of the cause, for which an execution was awarded.

Complainant made certain exceptions to testimony, which exceptions were sustained, as shown in opinion. Defendant also made

certain exceptions to testimony which were overruled. Also the defendants moved, as in the other cause, to strike Exhibit A filed with the petition of R. P. Taylor, trustee, on April 27, 1925, purporting to be a certified copy of the order made before the referee in bankruptcy in the proceedings of S. B. McClary, which were overruled. Complainant's motion to strike the amended and supplemental answer of the defendants filed October 27, 1925 setting up plea of estoppel and res adjudicata was sustained and said answer stricken.

Proper exceptions were taken to the action of the Chancellor in each feature of the decree in both causes, and by both sides, who prayed and were granted appeals there from, conditioned upon the execution of proper bonds. Complainants banks and the trustee in both causes perfected appeals. Defendants McClary also filed bond, but expressly limit the obligations of the bond to liability on the appeal from exceptions made to the testimony. Whether this could be done, or be regarded as a sufficient compliance with the order to constitute the appeal they were granted, so as to bring in question the action of the Chancellor in striking out the amended answer and pleadings, it is not necessary we think to determine, as the defendants have filed no assignment of error, and the appeal would therefore be regarded as abandoned. They stated also in their brief that it was the purpose to file the record for writ of error, but this does not appear to have been done. The only assignment of error made is by the complainants. In the first mentioned cause the assignment is:

"It is respectfully insisted that the learned Chancellor erred, in declining and refusing to hold that the conveyance made by defendant S. B. McClary was made with fraudulent intent, and to hinder, delay and defraud creditors, and with the aid, collusion and connivance of co-defendant B. F. McClary, and to illegally prefer him as a creditor."

In the other cause the assignments are:

"I. The Chancellor erred in decreeing in favor of defendants and in not setting said deed of trust aside and ordering the town property, aside as fraudulently made, and in dismissing complainants bill and not sustaining complainants bill, and not granting the prayer thereof."

"II. As the Chancellor held that complainant was entitled to the automobile, he should have given judgment against McClary and his sureties on replevin bond for $1,000, the amount of said bond; and he certainly erred in taxing complainant with all of the cost of the cause."

It is proper to say that defendants in the first cause appealed from the action of the Chancellor in striking out their amended

answer, as well as from his adverse action on their exceptions to the evidence, but in the second cause they appealed only from his adverse action to their exception to the evidence. Defendants have filed bonds in each cause, but in the first cause they limit the application of the bond to an appeal only as to the Chancellor's action on the evidence. They say in their reply brief that they will file the record for writ of error, but have not done so, nor do they file any assignment of error.

The Chancellor in his opinion, as stated, completes the statement of the case occasioned by the bankruptcy proceedings of S. B. McClary instituted after the bill was filed, in which the intervention of Taylor, trustee was had and the supplemental answers and pleas thereafter filed and actions had thereon, which with his findings and conclusions is as follows:

"These causes were prepared and heard together.

"The cause of Cleveland National Bank 1042 is filed against D. A. Arnwine, B. E. Biggs, S. B. McClary and B. F. McClary, and, seeks to set aside as fraudulent a certain deed executed by defendant S. B. McClary to his father B. F. McClary, dated August 22, 1922 convey certain farm lands set out and described in the bill. This bill was upon proper application declared a general creditors bill. Pro confesso was had against defendant Arnwine and Biggs. Defendants S. B. McClary and B. F. McClary demur, answer and file plea in abatement. The demurrer was overruled and the cause is here upon the merits.

"The cause of First National Bank of Polk county, is filed against H. W. McClary, trustee, Mattie McClary and S. B. McClary and J. D. Nuchols, and seeks to set aside as fraudulent a certain deed of trust executed by defendant S. B. McClary on May 6th, 1922 to H. W. McClary trustee to secure his mother the defendant Mattie McClary in the sum of $4,000 evidenced by note of defendant S. B. McClary which the proof shows to have been executed January 15, 1921, and also alleging that defendant S. B. McClary was selling and disposing of his property.

"At the close of deposition of defendant S. B. McClary taken in March, 1925 the defendants gave notice as appears from the record that 'at the convening of the next chancery court at Benton, Tenn., etc.' they would move to amend their answers.

"At the hearing at the October term 1925 being the second term subsequent to said notice above defendants offered and were permitted to file, subject to all exceptions and defenses, their amended and supplemental answer in each cause, separately averring that by reason of a voluntary petition in bankruptcy by defendant S. B. McClary, the listing of complainants in each cause as creditors, and the subsequent discharge of said petitioners, that complainants,

nor the trustee R. P. Taylor have any legal right to maintain these suits; that defendant S. B. McClary had no interest in the real estate; that by reason of complainants in each cause filing objections to the discharge of petitioner, averring that the bankrupt had fraudulently made the transfer of the property as alleged in these bills respectively for the purpose of hindering, delaying and defrauding creditors and that these issues were submitted to the referee, without proof, and the referee overruled said objections which action was sustained by the judge of said bankrupt court, this is relied upon and plead in said amended answer as res adjudicata, and these facts as well as the conduct of complainants in each cause respectively are pleaded and relied upon, as estoppel in these causes, and they also plead said discharge in bankruptcy as a bar to the maintenance of these suits.

Complainants at the same term and at the time said amended and supplemental answers were filed entered a motion to strike said answers, respectively.

"It is proper to state that these causes have been revived in the name of R. P. Taylor, trustee, who had been appointed and designated by the referee in bankruptcy to prosecute these suits.

On the motion to strike defendants' amended and supplemental answers in each of the causes above, the court is of the opinion that the matters therein averred and set up as a defense are not sound and therefore not available in these causes; for the reason and authorities set out in complainants brief in cause No. 1042 and other reasons, apparent, the court is of opinion that complainants motion to strike is sufficient, and the same will be sustained, and the amended and supplemental answer in each of the causes respectively will be stricken from the files.

"In cause No. 1042, Cleveland National Bank v. D. A. Arnwine, et al., two questions are presented, that of a fraudulent transfer to hinder and delay creditors, and securing or preferring one creditor above another.

"It is shown that.Dr. S. B. McClary at the time of the consummation of the deal or trade between himself and his father B. F. McClary, was indebted to his father in the sum of $900 for an automobile transaction between S. B. McClary and one Rogers, whereby B. F. McClary sometime previous to the deal between he and Dr. McClary, had given credit on a note which Mr. Rogers owed him for the obligation of S. B. McClary to Rogers, and that S. B. McClary had executed to his father B. F. McClary a note for said amount thereby becoming his debtor in this amount—just how long the note had been due or, owing is not essential, but it does not appear that demand had been made for it, or that B. F. McClary was anxious or trying to collect it, nor do I think from this record

that the trade and transfer between S. B. and B. F. McClary was consummated in order to secure or prefer the payment of this note. Solicitors for complainant do not stress this question, but rather as I gather from brief and argument base their grounds for relief upon the transfer and sale as fraudulent in fact as well as law.

"A voluntary conveyance is one without valuable consideration. The consideration in the case at bar was $8000, and the proof is to the effect that it was paid in good and solvent notes due or soon to become due and after deducting the $900 which S. B. McClary owed to B. F. McClary were delivered to S. B. by the purchaser it might be properly termed a cash transaction, since the notes were good and solvent and due or soon to become so-most of them past due—

"Upon the question of adequacy of price there is a wide range in the opinion of witnesses, just as there usually is in opinion evidence as to values, and especially real estate values more especially in recent years but the court is of opinion that the weight of the evidence when it is all considered is to the effect that the actual value of the land conveyed by deed August 22, 1922, S. B. to B. F. McClary is $9000 to $10,000 and taking into consideration that some of the witnesses were and did consider the barn on the farm which was erected after the transfer at a cost of about $950 to $1000 the court is of opinion and so finds that the consideration paid was not inadequate.

"The proof shows I think that the barn erected on the farm was built by and at the expense of the purchaser B. F. McClary. He deposited to the credit of Dr. S. B. McClary a certificate of deposit for $918 which he used in erecting the barn, and B. F. McClary paid two small bills in addition amounting to about $30 and I recall—The fact that Dr. McClary collected a small doctor bill out of the wages of one or two of the parties who helped to build the barn and sold to another a hog and deducted the amount from his wages, is not sufficient under the proof to warrant a conclusion that he was building for himself and at his expense. It is explained and not controverted that the sale was made with the understanding and the agreement, at the time that only upon condition that Doctor McClary would rent the farm at a stipulated price for five years and continue to operate and cultivate it or have same done, would the deal be consummated—this was based upon six per cent. interest on the investment and taxes. It is shown by defendant that this rental contract was prepared by John S. Shamblin attorney of this bar at or about the time of the consummation of the deal between S. B. and B. F. McClary. Mr. Shamblin is an honorable and reputable lawyer, and resides at Benton, and if this statement were not true it could easily have been shown by his testi-

mony which was available removing any conjecture upon this question.

"Was there fraudulent purpose or collusion in this transaction? It is in proof and not denied that at the time of the transfer August 22, 1922, Biggs and Arnwine principals on the note which this suit is predicated upon were considered solvent but it is insisted and the proof is that Dr. S. B. McClary was involved as surety for Harrison and Gamble and that this was the controlling reason for the transfer and that these facts were known to B. F. McClary.

"I am inclined to the belief that B. F. McClary wanted to help his son, as he had often done, and that he thought he was aiding him in a financial way, but at the time of the transfer, no knowledge of the doctor's liability is shown to have come to his father, he testifies that he was afraid it was true on account of the personal relationship between Doctor and Gamble—Doctor says the first his father B. F. McClary talked to him about Harrison & Gamble's indebtedness was in 1923. There is proof that Dr. McClary kept the fact secret from his father, for reasons explained by himself and Mrs. McClary—it is shown that Harrison & Gamble were a going partnership at this time, had never been sued for debt, at least no unpaid judgments against them—they made an assignment in September, 1923 a little over one year after the transfer, and I think the proof is that they were generally considered good and solvent at this time, unless it was defendant B. F. McClary. It is shown by witness Dr. Nuchols that he had made statements on the street and publicly that they were in bad shape financially, just when this was is not shown, whether before or after the transfer from S. B. to B. F. McClary, but evidently Dr. Nuchols was not impressed with his statement, for it is shown that he became the surety on note in First National Bank of Polk county, for the first time December 1. 1922—and it is also proven by Dr. McClary and not denied that he had information that Harrison & Gamble borrowed $3000 from complainant in 1923, and that Dr. Nuchols was surety for same—and Dr. Nuchols testifies that he knew nothing of their bad financial condition until about thirty days before assignment, that they were considered good and solvent by the community in general—the statement by B. F. McClary seems to have been the effervescence of a calamitous nature, or direful instinct, to which he was habitually inclined in matters of prophesy concerning the precariousness or stability as to the financial standing of his neighbors—and while B. F. McClary proves that he demanded settlement with Harrison and Gamble they told him they could pay all their indebtedness, and he gave them a year to pay him, which they did the last being in 1923, but he shows in his proof, which is not denied that the cashier of the bank at Benton, to whom they were indebted was

saying that they were perfectly solvent, and others as well. In the transaction under consideration we have a sale of land for a reasonable consideration paid for in notes of cashable value, for which the seller received the money and according to the proof paid out on his debts; at a time when Harrison and Gamble for whom he was endorser were considered solvent, more than a year before they made assignment.

"I do not think the sale was fraudulent or that there was collusion, under the proof in this record—I am therefore constrained to order and decree that as to defendants S. B. McClary and B. F. McClary the bill be dismissed with cost—so decree.

"In cause No. 1040 First National Bank of Polk county, the question of preferring creditors by executing deed of trust to H. W. McClary to secure Mrs. Mattie McClary in the sum of $4,000 by defendant S. B. McClary is the principal question involved, although the bill also alleges certain transactions with Dr. J. L. McClary and J. H. Taylor as well as the sale of personal property and an automobile was attached and replevined. As to transactions with Dr. J. L. McClary, and J. H. Taylor the issues under the proof are found for the defendants, and as to the automobile attached the court is of opinion that complainants are entitled to decree for value of automobile upon the replevin/bond.

"In regard to the deed of trust which is challenged and sought to be set aside, it appears from the proof that B. F. McClary and Mrs. Mattie McClary, father and mother of defendant S. B. McClary, conceived the idea that they wanted their son the defendant Dr. S. B. McClary, who was living on a farm in Polk county, to move into Benton in Polk county, so as to be near them, and to be better located. So it was that in the fall of 1920 they suggested to Dr. McClary that he buy the Copeland house near them and move to Benton, Dr. McClary objected to the price of $4500 and the further objection that he did not have the money with which to buy. Arrangements or rather agreements were made by which the house was purchased and on December 16, 1920 the Copelands executed deed for this property to Dr. S. B. McClary and he moved into the property in January, 1921; the deal for the property was made by Dr. B. F. McClary and the purchase price paid by him to the grantors $500 of his own money which was a gift to Dr. McClary, or partly so—and the other $4000 of the purchase price it is claimed was paid with the money belonging to Mrs. Mattie McClary, wife of B. F. McClary and mother of Dr. McClary. It seems that B. F. McClary made arrangements for the use of Mrs. Mattie McClary's money as well as engineering the deal or purchase of the property it appears that after Dr. McClary moved into the property in January, 1921, he executed a note payable to his mother Mrs.

Mattie McClary for the sum of $4000 used in the purchase of the house, due in four years with interest; and that later to-wit, on May 6, 1922, he executed a deed of trust conveying said property to H. W. McClary trustee to secure said note to his mother Mattie McClary which was recorded the same day. It is this transfer which is sought to be set aside as fraudulent. The rule as to preference of creditors I think in Tennessee is that a solvent debtor can always prefer and that an insolvent debtor can secure or prefer pre-existing or present creditors but the transaction must be in good faith, for a sufficient consideration and without intent to aid such insolvent debtor in defrauding his creditors.

"It is true that transactions between father and son, or those closely related are looked on with suspicion but they are not within themselves badges of fraud, and I do not understand that, this fact proven casts the onus on the grantee or beneficiary, but that it takes proof of other facts amounting/to a badge of fraud.

"In this transaction it is contended that the $4000 was in fact not the money of Mrs. Mattie McClary, but was the money of B. F. McClary and that Mrs. McClary was used merely as a "go-between" in order to cover up the fraudulent design of the parties.

"I do not think this is a fact as shown by the proof because there is no reason given why in 1920 and 1921, such a transaction should be consummated, there is no proof that at that early date there was any suspicion of either Dr. McClary or Harrison and Gamble's financial condition, or any reason why if the money had belonged to B. F. McClary he should not have taken the note in his own name and payable to himself. I think that the burden of the proof clearly is that this was the money of Mrs. Mattie McClary, given to her by her husband B. F. McClary, that it could be used in the purchase of the Copeland house for him. The fact that B. F. McClary managed the fund for his wife kept it out at interest and that he sometimes used it himself is not sufficient in my opinion to destroy the presumption of ownership by the wife under the proof here—funds are often kept and handled in that way between husband and wife—Dr. McClary first became surety on the note sued on in this cause on February 25, 1921, after the purchase of the Copeland house and after the execution of the note to his mother and under the proof in this cause the statement alleged to have been made by Dr. McClary just before he went into bankruptcy that he was "going to take care of his own personal debts first," or any other statement alleged to have been made by him in the proof cannot operate to destroy this transaction—Dr. McClary filed his petition in bankruptcy January 19, 1924, about four months after Harrison and Gamble executed deed of assignment and there is not sufficient evidence here to convince that he had these transactions in mind

when he executed the trust deed, or that at that time he was preparing to or contemplating a preference to defeat or delay creditors. Dr. Nuchols, became surety on the note sued on in this cause for the first time, December 1, 1922 and after the trust deed was of record and it is evident that he had no idea of insecurity or insolvency or of bad faith or he would not have signed the note. Mr. Knoedler testifies that this additional security when Dr. Nuchols was procured as surety, was required upon the suggestion of Dr. Hicks a director of the bank who according to the proof stated that ''in his mind there was some question as to the solvency of Harrison and Gamble'' nothing not an incident nor any information or fact upon which to base his feeling of insecurity, however it is shown that up to this time the bank had heard nothing to the contrary and considered them to be good and solvent, according to the proof.

''I think it is clear from the proof that Mrs. McClary had no knowledge of Harrison and Gamble's financial condition, neither did she have any knowledge of Dr. McClary's condition personally or as surety for Harrison and Gamble and it is therefore true that she had no fraudulent intent or evil design and was not a party to nor did she have any knowledge of any fraudulent purpose or design in the execution of the 'mortgage or deed of trust. Dr. McClary explains the delay which seems reasonable in transactions of this kind between mother and son, of course she expected him to secure and pay her; and it was his purpose and intent to do so I think, as well as his duty. He had paid the interest upon the indebtedness annually.

''I think it may be true that B. F. McClary in discussing the purchase of the Copeland house with Dr. McClary may have stated that he might never have to pay the note or indebtedness, that he might inherit it, this may have been on account of the eagerness of he and his wife to have him near them, or it may have been upon the idea that it might in truth happen, however that may be, I do not think there is anything in the contentions to be interpreted as fraudulent or of fraudulent design.

''The fact that the deed of trust was executed at a time subsequent to the execution of the note and that the description of the note in the deed of trust as maturing in one year instead of four years, I think are reasonably explained by the proof, and so far as the proof shows there was no ulterior motive in my opinion in the execution of the deed of trust, but that it was made to secure Mrs. Mattie McClary in the payment of the $4000 which was used to purchase the very property conveyed in the trust deed, which was proper and equitable—and that this was the note intended to be secured and which was referred to in the trust deed there can be no doubt.

"What the court has said in regard to the solvency or insolvency of Harrison and Gamble as shown by the proof and the relative actions of the parties and the effect it had on the transactions effecting the parties to this cause in so far as applicable are true in the cause as well as Cleveland National Bank cause No. 1042—and while the court does not mean to find as a fact that the financial condition of Harrison and Gamble, or of Dr. McClary was not bad prior to 1923, but only so far as affecting the knowledge and intent of the parties defendant and effecting these transactions challenged in these particular suits.

"In the absence of collusion and want of knowledge upon the part of Mrs. Mattie McClary her equities are paramount, therefore the relief sought in the bill to set aside this trust deed of May 6, 1922 is respectfully denied. In view of the record I take it that there is no contention that the house and lot (the Copeland house) is of value exceeding the amount of the note secured by the trust deed there is no proof that it is worth more, and counsel does not so insist.

"The court notices and sustains the exceptions of complainants to testimony of Mrs. Mattie McClary, B. F. McClary and S. B. McClary to all that part of their testimony wherein they are asked and answer as to their acting in good faith, or as to their intent in making and taking conveyance sought to be set aside.

"The exception is indeed general and in strictness should not be noticed, but this the court understands to be the rule, and in the conclusions reached the court has looked to all the proof and has not considered the abstract and incompetent questions referred to by counsel—these questions are determined from all the proof the actions, circumstances and conditions of the parties to be considered —and this has been the theory upon which the court has proceeded. In the absence of contemplation of fraud, I think the cause of Sullivan v. Myers is applicable to these causes, and the court having so found the rule in that case announced applies to the trustee in these causes—and he can not recover.

"The causes were heard together and the proof used interchangeably, but there will be separate decrees in each case as herein indicated."

Our investigation of the record results in our concurrence in the findings and conclusions of the Chancellor, whose fair and just analysis of the testimony justifies his opinion and leaves little to be said.

In cause No. 1042, that of the Cleveland National Bank, only the transaction of August 22, 1922, in which the deed by S. B. McClary to his father, B. F. McClary for the farm of 151 acres is brought in question by the assignment. This was not a voluntary deed, that is, one made without valuable consideration, which would be void as

against creditors, upon the idea that a man must be just before he is generous. Neither was it altogether an attempt to prefer creditors, but was a sale of the land to his father, at the recited consideration of $8000, paid in the manner and form as found by the Chancellor, and at a time when its present value had been enhanced by the addition of a large and valuable barn that was built subsequently by the son, who had leased it, with funds provided by the father, and in the building of which he had been enabled to put in a hog, which he sold to a workman, and a certain doctor bill which was owed him. These explanations, we think were sufficient evidence, if credible, to clear up any discrepancy and to relieve the transactions of the sinister aspects in which the bill presented their unexplained appearance. And while the Chancellor was of opinion that the father desired to aid the son is a financial way, we think he might have concluded, with equal verity and without change of results, that the old man may have thought, too, that he was getting a bargain in the land, whch the proof shows he bought and paid for without knowledge of any critical condition in the financial affairs of his son, or any purpose to aid him in hindering, delaying or defrauding his creditors, which, without any regard as to what may have been the purpose of his son, it is essential to establish otherwise before the court would have been authorized to set aside the deed in question, because his rights in the property were to be regarded as well as those of the son.

"The law is now settled in this State that an intentional fraud by the maker of a trust deed as to a portion of the debts provided for, but not participated in by the other beneficiaries whose debts are valid, is only void as to so much as is embraced by the fraudulent purpose of the maker and concurred in by the beneficiaries whose debts are false and fictitious. Such a deed is good as to the claims of other beneficiaries."

"A creditor of the grantor, with knowledge that the latter was much embarrassed and probably contemplating a fraudulent disposition of his property, but without intending to aid him in consummating his fraudulent purpose, bought a stock of goods in another State to secure his own claim, and at the same time get a good bargain in the purchase of the goods, and the money thus paid by the creditor was used by the grantor in paying some of his other creditors; held that no fraud could be attributed to the said creditor, and he was not liable as a participant in the fraud of the grantor." Troustine v. Cook, 4 Baxter, 162.

To the same effect is the case of Jones v. Cullen, 100 Tenn., page 1.

Certainly it would seem that if the beneficiaries in a trust deed who did not participate in a proven fraud on the part of the grantor, or the purchases of personal property under the circumstances detailed were to be protected, B. F. McClary should also be, when he paid other value at the time for the land in addition to what was due him from his son. It is true it is claimed he participated in a fraudulent purpose which it is said his son had, and received it only to cover the property up and thus aid his son, but this is a pure assumption from circumstances that do not necessarily require it, and it is asking too much, we think, to ask us to conclude in harmony therewith over the positive swearing of witnesses who are not otherwise contradicted, one of whom says also that all that was received for the land was paid on the debts.

The strongest proven circumstance from which ulterior motive might be predicated is the statement of A. P. McClary, about a year after this deed was made, as to what S. B. said to him. He was asked:

"Q. 9. I will ask you if you knew that S. B. McClary had deeded this farm to his father until only about a year after the date of the deed?"

"A. Well, no. All I know about it, he told me down here one day, talking about the shape they were getting in, he said he had done fixed his business a year ago, and that I had better do something about mine."

"Q. 10. Were you and he then discussing the Harrison and Gamble notes and your obligations on them?"

"A. Yes sir, that was what I was talking to him about."

This statement, if given effect here as affecting the transaction of the deed, at most, we think, would be to establish that in the making of the deed it had been his purpose to pay his own debts while the firm of Harrison & Gamble was a going concern, lest something might occur that would make security debts take precedence of his personal obligations.

We think if he had entertained a fear or suspicion that such might occur and determined that it was expedient and desirable under such circumstances to pay his own obligations, that such was his right, and that he could do so even under such circumstances without fraud, notwithstanding he might or would not have done so had he not entertained such fear.

In the case of Jones v. Cullen, (supra.) where Mrs. House did not participate in the fraudulent intention of C. S. Newman in making the trust deed, it was held that it was valid as to her. This case referred approvingly also to Bump on Fraudulent Conveyances, 3rd. Ed., pp. 189-190, where it was said:

"The secret motives which prompt the preferences are immaterial. The law can take no cognizance of feelings and intentions which are not manifested by extraordinary conduct. It can not assign a bad motive to an act which is not wrong either in itself or in its necessary consequences. When the act is right no secret feelings can change its character. In contemplation of law the motive which results in a proper action is not a bad one. The desire to avoid a sacrifice, or to prevent an expected criminal prosecution, or an expectation to receive future employment, or that the property will be settled upon the debtor's wife, or family, or mere caprice, or the gratification of secret ill will, does not affect the validity of the transfer, for such secret motives are not the subject of legal inquiry. Where there is merely a preference, even a jury is not at liberty to deduce fraud from that which the law presumes honest."

In this same case the court announced and approved the principle cited in 6 Wheat., (U. S. 223) that a debtor has the right to prefer one creditor to another in payment where no fraudulent purpose was participated in by the one who received the payment, and applied the principle to a case where a conveyance was made with the view of preventing prosecution for a felony. In the case at bar even had it been shown that at the time of the deed of August 22, 1922 the defendant S. B. McClary was in failing circumstances, if the liability for security debts be taken into consideration as conspiring to produce it, he would have had the right, without something more to constitute fraud than this circumstance, to have preferred his own debts and have paid them off if he could do so, without being required to await the contingency of possible failure of others, which may have been feared. We know of no statute in effect which would have directly or indirectly prohibited this, and certainly we think the common law does not classify such action under such circumstances as wicked or fraudulent.

Neither do we regard the statement of the witness Guinn as to what B. F. McClary said to him about the barn with that seriousness with which the insistence of complainants clothe it. While B. F. McClary denies that he made the statement in the form in which it was presented to him in the question, which imported a considerable divergence from the real statement, wherein the term "testify" was not used, Guinn was told in the conversation referred to by B. F. McClary that he had paid for the barn himself, which we think should be construed to mean that he had paid for the same through his agent, S. B. McClary, as this was the real transaction, as the proof showed it to be. He asked Guinn if inquired about to state that he had paid for it, and we think it should

be construed to mean that he was asking Guinn to state the legal effect of the transaction. Guinn, construing the request to mean its mechanical operation, said he was paid by Spence, who did actually and manually deliver to him the pay, and it might have been regarded that he disputed its legal effect.

What we have said in the foregoing relates also, where applicable, to contentions in the other case, which seeks to set aside the trust deed to H. W. McClary, trustee, executed in May, 1922, some months before the August deed in the other case to secure the loan of $4,000 of funds claimed to belong to Mrs. McClary, the mother, borrowed sometime before but deed executed later.

The deed to Taylor, he not being a party, is not in issue, except as a circumstance affecting the transaction assailed. Much stress is put upon the insistence that the money did not belong to Mrs. McClary, and her testimony is criticized as not conveying any very intelligent comprehension of the transactions by which she became possessed of the money, or by which it was loaned to her son. She was old and unused to such transactions, and we think did not very intelligently understand the forms in which money was held, but she thought the money was hers, and both the father and the son testify that it was. It is true it had been kept and managed by the husband, and used pretty much as he pleased upon any occasion, nevertheless he was responsible and she trusted him. At any rate her title thereto took visible evidence when the note was executed, which should be regarded as in the nature of a confirmation of the previous claims, and as establishing that she had loaned the money. There appears no sufficient evidence to make her guilty of any fraud, or that she was used to cover up any fraudulent or unreal transaction. The four thousand dollars was actually paid to the grantors for the property, together with five hundred dollars more, which was a gift to S. B., according to the proof.

These things appeared from the sworn testimony, which, if credible, offered a reasonable explanation of the alleged inimical circumstances relied upon to establish complainant's case. The Chancellor did not feel authorized to disregard this evidence and adopt the theories of the complainants. Neither do we. The error assigned in the first cause is overruled and the decree affirmed.

In the other cause it is also insisted that the Chancellor should have given a judgment for $1000, the amount of the replevin bond. In that event he would or should have provided that it be satisfied upon the return of the automobile. Its value will be reached as a result of the method which he provided in his decree. The disposition of the cost was within his discretion, which we do not think has been abused.

It is proper to state that we are a little bit confused at the apparent acquiescence with which the defendant, Dr. S. B. Nuchols has been allowed to disappear from the contentions, and for this reason we might have construed that this disappearance was by consent, or for some unexplained reason, and have construed the assignment as not raising any question regarding the dismissal of the bill as against said Nuchols, but we think the assignment and the record raises the question as to his disregard in the dismissal of the bill, although it is not directly referred to. This defendant admits in his answer that he signed the note sued on, and no plea of payment or discharge therefrom was made by him. The Chancellor (other than that the defendant Nuchols signed the note after the deed attacked had been executed, and that he became surety on the note sued on for the first time December 1, 1922, after the trust deed was of record, and that it is evident he had no idea of insecurity, or of insolvency, or of bad faith, for he would not have signed the note) makes no further finding as to the matter, nor does he assign any reason for the failure to give a judgment against him. We think it does appear from the record that a liability had been established for the amount of the note sued on with interest and attorney's fee as against defendant Nuchols, and that no discharge in bankruptcy or otherwise appeared to relieve him from such consequence. It was error, therefore, to dismiss the bill as against him. To this extent the decree in the second cause will be reversed and a decree entered here against Nuchols for the amount of the note, interest, attorney's fee, etc. Otherwise the decree will be affirmed, and the cause will be remanded to carry out the reference ordered by the Chancellor as to the value of the automobile.

The costs of the causes in this court will be equally apportioned between the two causes. The defendant Nuchols will pay one-half the costs to be taxed in this court against this cause, and the complainants and their securities will pay the other one-half so taxed.

The costs of the first cause in this court will be paid by the complainant and its securities. The costs of the causes in the court below will remain as adjudged by the Chancellor.

Portrum and Thompson, JJ., concur.